IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| XYNGULAR CORPORATION, a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>INNUTRA, LLC, an Arizona limited liability company, INNUTRA, LLC, a California limited liability company, JAMES AYRES, an individual, CINDY HANSEN, an individual, GLEN OLIVER, an individual, CICELY KARST, an individual, and CHRIS HUMMELL, an individual,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS<br><br><br>Case No. 2:13-CV-685 TS<br><br>District Judge Ted Stewart |

    This matter is before the Court on Defendants' Partial Motion to Dismiss. Defendants seek dismissal of the First, Seventh, and Ninth Claims for Relief in Plaintiff's First Amended Complaint. For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

I. BACKGROUND

    Plaintiff Xyngular is an international network marketing company based in Lehi, Utah. Xyngular sells nutritional supplements through a network of independent distributors. On July 1, 2010, Xyngular entered into an agreement with Defendant James Ayres (the "2010 Agreement"). Under the 2010 Agreement, Ayres agreed to act as the face and voice of Xyngular.

    In early 2012, Xyngular and Ayres began negotiating a new contract (the "2012 Agreement"). The parties never executed a written agreement. However, Plaintiff alleges that

both parties performed under the terms of the 2012 Agreement beginning in or about July 2012. In its First Claim for Relief, Plaintiff alleges that Ayres breached various provisions of the 2010 and 2012 Agreements when he began working for Defendant Innutra.[1]

Defendants Hansen, Oliver, Karst, and Hummell all worked for Xyngular, but are now associated with Defendant Innutra. In its Seventh Claim for Relief, Plaintiff alleges intentional interference with contracts against all Defendants. Plaintiff alleges that "Defendants intentionally interfered with the contracts between Xyngular and its distributors by encouraging or advising them to breach their duties of non-solicitation and confidentiality to Xyngular."[2]

In its Ninth Claim for Relief, Plaintiff alleges that Defendants Innutra and Ayres "misappropriated some or all of Xyngular's trade secret Core4 product formulations by using those formulations, either in whole or in part, in Innutra's products."[3]

## II. MOTION TO DISMISS STANDARDS

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[4] Plaintiff must provide "enough facts to state a claim to relief that is

---

[1] The Court previously dismissed Defendant Innutra California for lack of personal jurisdiction. *See* Docket No. 70. Therefore, all references to Innutra are to Innutra Arizona.

[2] Docket No. 31, ¶ 81.

[3] *Id*. ¶ 96.

[4] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

plausible on its face,"[5] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[6] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[7]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[8] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[9]

A challenge to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may take one of two forms. First, a party may bring a facial attack, which "looks only to the factual allegations of the complaint in challenging the court's jurisdiction."[10] Second, a party

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Id*. (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[8] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[9] *Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

[10] *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

may bring a factual attack, which "goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction."[11]

### III. DISCUSSION

A.  FIRST CLAIM FOR RELIEF

Defendants seek dismissal of Plaintiff's First Claim for Relief to the extent that it asserts a claim based on the purported 2012 Agreement. Defendants argue that Plaintiff's Complaint fails to sufficiently allege the existence of a contract. Therefore, they argue, this claim should be dismissed.

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[12] "One cannot prove a breach of contract claim without proving the actual existence of a contract, including offer and acceptance."[13] Under Utah law, a contract may be formed when there is "a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain."[14]

Plaintiff alleges that, in early 2012, it began negotiating a new contract with Defendant Ayres. Plaintiff acknowledges that the parties never signed the 2012 Agreement, but nevertheless alleges that the parties agreed on the terms of an agreement, began operating under

---

[11] *Id.* (citation omitted).

[12] *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001).

[13] *Moss v. Parr Waddoups Brown Gee & Loveless*, 197 P.3d 659, 664–65 (Utah 2008).

[14] *Fowler v. Taylor*, 554 P.2d 205, 208 (Utah 1976).

the terms of that agreement, and believed that they were in a contractual relationship. These allegations are sufficient to survive a motion to dismiss. Therefore, the Court will not dismiss Plaintiff's First Claim for Relief as it relates to the 2012 Agreement. The arguments raised by Defendants concerning that purported agreement are better addressed at summary judgment or trial.

B.  SEVENTH CLAIM FOR RELIEF

Defendants argue that Plaintiff's intentional interference claim is preempted by the Utah Uniform Trade Secrets Act (the "UTSA") and barred by the economic loss rule.

*1.  UTSA Preemption*

Defendants seek dismissal of Plaintiff's intentional interference claim as preempted by the UTSA. The UTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."[15] However, it does not affect "other civil remedies that are not based upon a misappropriation of a trade secret."[16]

The Utah Court of Appeals recently held "that a claim is preempted [by the UTSA] to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information."[17]

> Under this standard, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective o[f] whatever surplus elements of proof were necessary to establish it. However, to whatever extent that a claim is based upon wrongful conduct independent of

---

[15] Utah Code Ann. § 13-24-8(1).

[16] *Id*. § 13-24-8(2)(b).

[17] *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 331 (Utah Ct. App. 2012).

5

the misappropriation of trade secrets or otherwise confidential information, it is not preempted.[18]

With this standard in mind, the Court considers Plaintiff's claim for intentional interference. Plaintiff alleges that "Defendants accomplished the interference by improper means, specifically, the use of Xyngular's confidential and proprietary distributor list, as well as false and misleading statements as alleged [in the First Amended Complaint]."[19]

Plaintiff argues that its Seventh Claim for Relief should not be dismissed to the extent that it is based on allegations apart from the alleged trade secret misappropriations. Specifically, Plaintiff points to the allegation that Defendants interfered with Plaintiff's contracts by using false and misleading statements. Plaintiff seems to acknowledge that any claim based on alleged trade secret misappropriation would be preempted. Therefore, this portion of Plaintiff's intentional interference claim will be dismissed.

To establish a claim for intentional interference with prospective economic relations, a plaintiff must show "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."[20] "Improper means include . . . deceit or misrepresentation . . . or disparaging falsehood."[21]

---

[18] *Id.* (internal quotation marks and citations omitted).

[19] Docket No. 31, ¶ 83.

[20] *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982).

[21] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) (internal

In Paragraph 31 of the First Amended Complaint, Plaintiff identifies a number of allegedly false and disparaging statements Innutra made about Xyngular's executives and products. These allegations are sufficient to maintain a claim by Plaintiff against Defendant Innutra for intentional interference. However, there are no allegations against the individual Defendants. Therefore, this claim will be dismissed as against them.

2. *Economic Loss Rule*

The individual Defendants also argue that Plaintiff's intentional interference claim is barred by the economic loss rule. As the Court will dismiss this claim against the individual Defendants, the Court need not address Defendants' arguments concerning the economic loss rule.

C. NINTH CLAIM FOR RELIEF

Plaintiff's Ninth Claim for Relief asserts a claim for misappropriation of trade secrets related to Xyngular's Core4 products. Defendants seek dismissal of this claim, arguing that Plaintiff lacks standing to bring such a claim.

Defendants rely on this Court's decision in *Brigham Young University v. Pfizer, Inc.*[22] Defendants cite *Pfizer* for the proposition that "one must own a trade secret to sue for its misappropriation."[23] Defendants, however, fail to provide the entire sentence, which gives the statement context. The Court did not simply state that one must own a trade secret to sue for misappropriation. Rather, the Court stated that "[t]here is ample authority for the proposition

---

quotation marks and citation omitted).

[22] No. 2:06-CV-890 TS, 2012 WL 1032769 (D. Utah Mar. 26, 2012) (unpublished).

[23] *Id*. at *2.

7

that one must own a trade secret to sue for its misappropriation."[24] While this is a correct statement, there is also ample authority for the proposition that one need not be an owner in the traditional sense to bring a misappropriation claim.[25] Indeed, there are a number of cases where courts have allowed non-owners to assert a misappropriation claim.

In this case, it is clear that Plaintiff is not the owner of the alleged trade secrets. Plaintiff's ability to bring suit for misappropriation, however, is not clear. Plaintiff asserts that it is a licensee, but there are no allegations to support this contention and the evidence relied upon by the parties does not help to clarify the relationship between Plaintiff and the manufacturer of the Core4 products. Ultimately, Plaintiff has the burden to establish standing.[26] Plaintiff has not met its burden here. While there may be instances where a non-owner may bring a claim for misappropriation of trade secrets, Plaintiff has failed to present sufficient allegations or evidence to establish standing at this time. Therefore, this claim will be dismissed without prejudice.

IV. CONCLUSION

It is therefore

ORDERED that Defendants' Partial Motion to Dismiss (Docket No. 58) is GRANTED IN PART AND DENIED IN PART.

---

[24] *Id.*

[25] *See DTM Research v. AT&T Corp.*, 245 F.3d 327, 332–33 (4th Cir. 2001) (holding that fee simple ownership is not required to bring misappropriation claim); *see also Metso Minerals Indus., Inc. v. FLSmidth-Excel LLC*, 733 F. Supp. 2d 969, 972–78 (E.D. Wis. 2010) (holding that licensee had standing to bring misappropriation of trade secret claim).

[26] *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012).

DATED this 20th day of November, 2013.

BY THE COURT:

_____
Ted Stewart
United States District Judge